Marc J. Randazza, FL Bar # 625566
Jason A. Fischer, FL Bar # 68762
Randazza Legal Group
2 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
888-667-1113
305-437-7662 fax
mjr@randazza.com

Attorneys for Plaintiff
LIBERTY MEDIA HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC<br>A California Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>DOMAINCLUB PRIVACY SERVICE, a Florida corporation; DOMAIN ADMINISTRATOR; SEWORKS, LLC, a Florida LLC; and DOES 1-10.<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1) CYBERPIRACY – 15 U.S.C. § 1125(d);<br>2) TRADEMARK INFRINGEMENT (UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN) – 15 U.S.C. § 1125(a);<br>3) WILLFUL TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114(1) |

Plaintiff, Liberty Media Holdings, LLC, a California Corporation (hereinafter "Liberty" or "Plaintiff") files this Complaint against multiple Defendants for violations of Liberty's intellectual property rights, namely Liberty's trademarks, which are being infringed upon by multiple cybersquatters. Liberty files this Complaint against Domainclub Privacy Service, Domain Administrator, and Seworks, LLC, and alleges as follows:

    **I.  INTRODUCTION**

    1.  The Plaintiff is the victim of a widespread campaign by individual and corporate "cybersquatters" – individuals who register and/or use domain names that are confusingly similar to the trademarks, registered or otherwise, of their targets. They do so to profit either from

selling the domain names on the domain name after-market, using the domain names to earn click-through advertising fees, or merely to divert a certain percentage of traffic, otherwise destined to arrive at the Plaintiff's website, to other websites.  The Defendants in this action have all targeted Liberty's trademark CORBIN FISHER®, and are diverting traffic from Liberty's website to their own websites or to other websites.

2.  This action seeks injunctive relief and damages against these multiple Defendants for their willful infringement of the Plaintiff's niche-famous trademarks.  The Plaintiff seeks injunctive relief to transfer ownership of the infringing domain names to the Plaintiff's control, and the Plaintiff seeks to impose the maximum statutory damages award of $100,000 per infringing domain name upon each Defendant for each domain registered and/or used, as provided for in 15 U.S.C. § 1125(d), otherwise known as the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d) (hereinafter, "ACPA").

3.  Furthermore, given the Defendants' clear willful infringement, the Plaintiff asks this Court to determine that this is an "exceptional case," warranting the award of the Plaintiff's attorney fees.

## II.  JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

5.  This Court has personal jurisdiction over the Defendants, as Domainclub Privacy Service; Belgium Domains, LLC; Moniker Online Privacy Service, LLC, and Seworks, LLC are Florida businesses, have engaged in business activities in and directed to this district, and have committed a tortious act within this district.

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims pleaded herein occurred in this district.

### III. THE PARTIES

### A. THE PLAINTIFF

7. LIBERTY is a California corporation with a principal place of business in Florida.

8. LIBERTY operates a network of websites under the CORBIN FISHER mark, including CorbinFisher.com, which provides services of interest to the adult entertainment community.

### B. THE DEFENDANTS

9. There are two classes of defendants in this case, A) actual domain registration holders, and B) domain registration identity masking services.

### A. Actual Domain Registration Holder Defendants

#### 1. Seworks, LLC

10. Seworks, LLC is an LLC doing business at 4700 Gulf of Mexico Drive, D-206, Longboat Key, FL 34228.  See Exhibit A

11. At this time, Seworks is the registered name holder of the domain name, www.corbinfishernaked.com, which was registered and used with a bad faith intent to profit from such registration or use.  See Exhibit A.

12. Seworks has registered the names with GoDaddy.com, Inc., an Arizona corporation.  See Exhibit B.

### B. Domain Registration Identity Masking Service Defendants

13. The following Defendants are domain registration identity masking services.  This kind of service registers domain names for third parties who wish to keep their identity a secret.  These services have legitimate uses, but are often (as in the instant case) used by persons involved in unlawful activity, and who seek to evade detection and liability for their actions.

14. These Defendants act as the Registered Name Holder of domains for their customers, and then license back use of those domains to their customers.

15. These Defendants, by virtue of a contract entered into with their respective customers to provide anonymity services, inserted the name of their own anonymity service as the listed registrant for the infringing domains, to mask the true identity of who actually had control over the infringing domain(s).

16. The ICANN Registrar Accreditation Agreement (hereafter "ICANN Agreement") is an agreement between ICANN (a body authorized by the United States Government to regulate Internet registrations in this Country) and registrars of Internet domains. ICANN is the Internet Corporation for Assigned Names and Numbers, and is the governing body that grants accreditation to domain name registrars including these class B Defendants.

17. Even though these Defendants will likely claim that they are not the "true" Registered Name Holder of the infringing domains, the ICANN Agreement provides that in certain circumstances, parties in their position can be held responsible for the actions of underlying registrants.

18. Under paragraph 3.7.7.3 of the ICANN Agreement, "[a]ny Registered Name Holder who intends to license use of a domain name to a third party is nonetheless the Registered Name Holder of record" and is liable for all "harm caused by wrongful use of the Registered Name, unless it promptly discloses the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm."

19. Under Paragraph 3.7.7.3, these Defendants may evade liability by promptly stripping the below domains of their anonymity. In the event that these class B Defendants do so within 7 days of receiving a copy of this Complaint, the Plaintiff will seek leave to amend this Complaint to reflect the underlying customer as the defendant in this action, and remove the identity masking service defendant from this action. However, in the event that any of the following Defendants declines to do so, it will remain as a proper Defendant in this case, as contributorily liable for its customer's cybersquatting. See *Solid Host v. Name Cheap*, 2009 U.S. DIST LEXIS 63423 (C.D. Cal. 2009).

### 1. DomainClub Privacy Service

1. DomainClub Privacy is a Florida corporation doing business at 5722 South Flamingo Road, Suite 246, Cooper City, FL 33330 under the name "DomainClub Privacy." See Exhibit A.

2. At this time, DomainClub Privacy is the registered name holder of the domain name, www.corbinfischer.com, which was registered and used with a bad faith intent to profit from such registration or use. See Exhibit A.

3. DomainClub Privacy has registered the name with DomainClub.com. See Exhibit B.

4. Domainclub.com principal place of business is at 722 South Flamingo Rd., Suite 246, Cooper City, FL 33330.

### 2. Domain Administrator

5. Domain Administrator is the registered name holder of the domain name, www.corbinfosher.com, which was registered and used with a bad faith intent to profit from such registration or use. See Exhibit C.

6. At this time, the true identity of Domain administrator is unknown. Plaintiff will amend the complaint upon learning the true identity of this Defendant.

7. Domain Administrator has listed his or her current location as in 1515 Nan Jing West Road, Level 29, Shanghai 200040, CN. See Exhibit C. Plaintiff believes this to be a false address.

8. Domain Administrator has registered the domain name with Moniker Online Services, Inc, a Florida corporation located at 20 SW 27th Ave., Suite 201, Pompano Beach, FL 33069. See Exhibit D.

## IV.  BACKGROUND

### A.  Liberty's Valuable Trademark Rights

#### 1.  CORBIN FISHER®

9. The Plaintiff has been using the CORBIN FISHER mark in international commerce in connection with the adult entertainment industry since as early as January 2004.

10. The Plaintiff owns overwhelming trademark rights to the mark CORBIN FISHER established by six years of continuous and widespread use on the Internet, millions of daily visitors to the CORBIN FISHER network of websites, as well as near ubiquitous recognition in the relevant channels of trade.

11. The Plaintiff has been using "CORBIN FISHER" as a source identifier for its services since October 2003.

12. On August 11, 2005, Excelsior Media LLP (Liberty's predecessor in interest) applied to register the CORBIN FISHER mark, and on January 9, 2007, the United States Patent and Trademark Office issued Registration No. 3,196,073.  See Exhibit G.

13. The CORBIN FISHER mark (in connection with the adult entertainment industry) can only identify the Plaintiff, and Internet users who navigate their browsers to the Infringing Domains would be misled to believe that the Infringing Domains (true and correct copies of which appear as Composite Exhibit H are in some way connected to and affiliated with the Plaintiff.

14. The Plaintiff has created a genuine commodity in the CORBIN FISHER trademark.

#### 2.  CORBIN FISHER'S AMATEUR COLLEGE MEN®

15. Since at least January 2004, Liberty has used in commerce the service mark "CORBIN FISHER'S AMATEUR COLLEGE MEN" to promote online adult websites featuring photographs and videos.

16. On August 11, 2005, Excelsior Media LLP (Liberty's predecessor in interest) applied to register the CORBIN FISHER'S AMATEUR COLLEGE MEN mark, and on January

23, 2007, the United States Patent and Trademark Office issued Registration No. 3,200,827. See Exhibit I. The CORBIN FISHER'S AMATEUR COLLEGE MEN service mark is recognized in the relevant marketplace as a brand identifier for online adult websites featuring photographs and videos.

### B. Liberty's Internet Presence

17.     Liberty maintains a substantial presence on the Internet. Via the Internet, Liberty advertises its products and services, transacts business with its customers, offers its customers access to many of its services, and provides product support, among other things.

18.     In order to provide customers with easy access to its online products and services, Liberty has registered a number of Internet domain names. Many of these domain names correspond to Liberty's trademarks and service marks. Examples of such domain names are <corbinfisher.com>; <corbinpays.com>; and <corbinup.com>.

19.     Each of these domain names, as well as others registered to Liberty, resolves to a Liberty-created website that provides Liberty's customers with information related to Liberty's products and services. These websites generate business for Liberty and allows Liberty to maintain relationships with its customers.

### C. Defendant's Wrongful Conduct

20.     Defendants registered the Infringing Domain Names.

21.     Defendants are and/or were the user of the Infringing Domain Names.

22.     Defendants registered and used the Infringing Domain Names to capitalize on the popularity of Liberty's online services offered in connection with the Liberty Marks.

23.     On information and belief, Defendants chose the Infringing Domain Names and commenced use of the CORBIN FISHER mark in connection with its websites solely for the purpose of improperly trading upon Liberty's trademark rights.

### D.  The Infringing Domain Names

24. The Infringing Domain Names incorporate the entirety of the Plaintiff's CORBIN FISHER trademark, consist of intentional misspellings of Liberty's Marks, or consists of the Plaintiff's mark with a generic name attached thereto.

25. The Infringing Domain Names are identical or confusingly similar to Liberty's Marks. The Infringing Domain Names do not resolve to websites owned or endorsed by Liberty. Rather, upon information and belief, many of the Infringing Domain Names resolve to websites that are controlled by the Defendants.

26. Plaintiff is informed and believes, and on that basis alleges that the Defendants were aware of Liberty's rights in the CORBIN FISHER mark and willfully infringed upon it by registering the Infringing Domain Names.

27. Plaintiff is informed and believes, and on that basis alleges that Defendants were aware of Liberty's rights in the CORBIN FISHER mark and willfully infringed upon those rights by using the Infringing Domain Names in a bad faith attempt to capitalize on the CORBIN FISHER mark.

28. Defendants provide no *bona fide* services at the Infringing Domain Names, but rather send visitors into rabbit holes of links that eventually lead to other commercial websites. Defendants then receive payment for each of these clicks. Defendants' Websites contain numerous advertisements for and/or hyperlinks to a variety of products and services.

29. On information and belief, Defendants receive financial consideration for this misdirected traffic.

30. On information and belief, through Defendants' aforementioned acts, Defendants intended to misdirect valuable Internet traffic that otherwise would have gone to the CORBIN FISHER Websites.

31. On information and belief, through Defendants' aforementioned acts, Defendants willfully created a likelihood of confusion between the Plaintiff's services and Defendants' services offered at the Infringing Domain Names.

32. When a person looking for a Liberty website lands on one of Defendants' Websites, that person may click on one of the advertisements or hyperlinks on the site either because the person finds it easier to click advertisements or hyperlinks than to continue searching for the Liberty site, or because the person mistakenly believes that Liberty has authorized or endorsed the advertisements or hyperlinks. In either case, the person has been diverted from the Liberty website he or she was seeking to visit, and Liberty has lost the opportunity to interact with that person.

33. Liberty has not consented to Defendants' use of the CORBIN FISHER tradename, service mark, and/or domain name, nor has Liberty sponsored, endorsed, nor approved of the services offered and promoted by Defendants their respective Websites.

34. Defendants are not affiliated with, or sponsored by, Liberty and have not been authorized by Plaintiff to use the Liberty Marks. Defendants have not now nor ever been authorized by Plaintiff to use or register any name or mark that includes the Liberty Marks.

35. Defendants' services consist of nothing more than misleading webpages containing links to other webpages where third party goods and services are located.

36. Defendants use the Infringing Domain Names in a scheme to profit from the Liberty Marks in bad faith.

37. Upon information and belief, Defendants receive payment when Internet users click on one or more links or advertisements on the websites located at the Infringing Domain Names. Defendants receive these payments from one or more advertisers, affiliate programs, and/or search engines.

38. Defendants have done nothing to market or promote the CORBIN FISHER mark independently of the infringing services offered at Defendants' Websites.

39. On information and belief, Defendants adopted and used the CORBIN FISHER mark and the Infringing Domain Names for the purpose of misleading and confusing the public about its association with Liberty, and trading on the goodwill, reputation, and fame of the CORBIN FISHER mark.

40. Defendants' registration and use of the Infringing Domain Names is to primarily capitalize on the goodwill associated with the Liberty Marks for profit.

41. Defendants' infringing conduct and refusal to respect Liberty's trademark rights indicates that Defendants deliberately and willfully selected and are using a mark and a domain name similar to Liberty's famous trademark to mislead and confuse consumers into believing that Defendants' Websites are provided by, sponsored by, or approved of by CORBIN FISHER. Defendants are trading on Liberty's reputation and goodwill, and its enormous investment in the promotion of the CORBIN FISHER service mark, thus diluting the distinctive quality of the famous CORBIN FISHER mark.

42. Defendants registered the Infringing Domain Names willfully and with bad faith intent to profit from the Liberty Marks.

43. On information and belief, Defendants knew about CORBIN FISHER, the CORBIN FISHER mark, and CORBIN FISHER's business at the time it adopted the CORBIN FISHER tradename, service mark, and the Infringing Domain Names, or was willfully blind to Liberty's trademark rights.

44. Defendants' first commercial use of the CORBIN FISHER mark and the Infringing Domain Names occurred after Liberty's first use of the CORBIN FISHER mark in connection with its services, and years after CORBIN FISHER's common law rights had been established.

45. Defendants' first commercial use of the CORBIN FISHER mark and the Infringing Domain Names occurred after Liberty's CORBIN FISHER mark had become famous.

46. Defendants' promotion of its services under the Infringing Domain Names is directed at consumers of Liberty's services and is conducted through the same channels of trade as are used by Liberty to promote its services under the CORBIN FISHER mark.

47. Defendants' use of the Infringing Domain Names, and Defendants' actions described herein are certain or likely to cause confusion, deception, and/or mistake as to: (a) the

source or origin of Defendants' services; and (b) whether LIBERTY sponsors, endorses, or approves of Defendants or its services or is otherwise affiliated with Defendants.

48. Defendants' use of the Infringing Domain Names and Defendants' actions described herein dilute the distinctive quality of Liberty's famous CORBIN FISHER mark.

49. Defendants' use of the Infringing Domain Names and its actions described herein have been, and continue to be deliberate, willful, and with disregard of Liberty's rights.

50. Defendants continuing conduct constitutes an ongoing risk that the public will be confused as to the source or origin of the services provided at the Infringing Domain Names.

51. Liberty has sustained, and will continue to sustain, irreparable injury as a result of Defendants' conduct. This injury is not compensable solely by the award of monetary damages. Unless Defendants are immediately restrained and enjoined from engaging in their infringing and diluting conduct, Liberty will continue to suffer irreparable injury.

## FIRST CLAIM FOR RELIEF

### Cybersquatting – 15 U.S.C. § 1125(d)

52. Plaintiff re-alleges and incorporates by reference as if verbatim, each and every paragraph.

53. This is an action under the ACPA, 15 U.S.C. § 1125(d).

54. Each Defendant's Infringing Domain Names are confusingly similar to and/or dilutive of Liberty's famous CORBIN FISHER mark.

55. Each Defendant has registered, has used, and/or is using the Infringing Domain Names with the bad faith intent to profit from Liberty's famous CORBIN FISHER mark.

56. The Defendants' actions constitute a violation of the Lanham Act and the Anti-cybersquatting Consumer Protection act as codified at 15 U.S.C. § 1125(d).

57. Liberty has been, is now, and will continue to be irreparably harmed by the Defendants' aforementioned acts, and unless enjoined by the Court, the Defendants' unauthorized use of the Infringing Domain Names will continue, and there is no adequate remedy at law for the harm caused by the acts alleged herein.

58. The actions alleged herein to have been undertaken by the Defendants were actions that the Defendants caused to occur, were actions that the Defendants authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions in which the Defendants assisted, participated or otherwise encouraged, and are actions for which the Defendants is liable.

59. Pursuant to 15 U.S.C. § 1125(d)(1)(c), this Court is empowered to order the Registrar to transfer the domain names to a prevailing Plaintiff.

WHEREFORE, Liberty prays that on the First Claim for Relief, the Court issue an order:

a. granting a preliminary and permanent injunction transferring all Infringing Domain Names and/or any other URLs that incorporate the Plaintiff's trademarks to the Plaintiff, Liberty;

b. directing each Defendant to relinquish all rights in the Infringing Domain Names and to transfer the Infringing Domain Names to the Plaintiff, Liberty; and directing each Defendant to relinquish all rights in any other Internet domain names that contain the Plaintiff's marks or any other confusingly similar variation thereof;

c. directing each Defendant to account to Liberty for any and all gains, profits, and advantages derived by them from the sale of products or services through the use of the infringing mark or the Infringing Domain Names;

d. directing the relevant registrar of each of the Infringing Domain Names to transfer the Infringing Domain Names to the Plaintiff without delay;

e. awarding Plaintiff statutory damages of $100,000 per infringing domain name held by each Defendant under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

f. awarding the Plaintiff its reasonable attorneys' fees, costs of Court and disbursements incurred herein in view of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117;

    g.    granting the Plaintiff all other relief to which it is entitled and such other or additional relief as is just and proper.

## SECOND CLAIM FOR RELIEF

### Trademark Infringement, Unfair Competition, and False Designation of Origin
### 15 U.S.C. § 1125(a)

60. Plaintiff re-alleges and incorporates by reference as if verbatim, each and every paragraph.

61. Liberty alleges and believes that Defendants chose the Infringing Domain Names, adopted the CORBIN FISHER mark, and took the other actions alleged above, in order to cause confusion or mistake, to deceive the public as to the origin, sponsorship, or approval of the services of Defendants, and/or to deliberately pass off Defendants' services as those of Liberty.

62. Defendants' conduct constitutes trademark infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

63. Unless enjoined, Defendants will continue their infringing conduct.

64. As a direct and proximate result of Defendants' infringing conduct, Liberty has suffered and will continue to suffer irreparable injury to its business reputation and goodwill for which no adequate remedy exists at law, and Liberty has lost sales, visitors and profits in an amount not yet fully ascertained.

65. Defendants' conduct complained of herein is malicious, fraudulent, knowing, willful, and deliberate, entitling Liberty to an accounting of Defendants profits, increased damages, and an award of it's attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. § 1117.

WHEREFORE, Liberty prays that on the Second Claim for Relief, the Court issue an order:

    a.    granting a preliminary and permanent injunction restraining Defendants and any and all individuals or entities acting in concert or participation with them, from using in connection with any product or service or the manufacture, importation,

    exportation, sale, offering for sale, distribution, advertising, promotion, labeling, or packaging of any product or service, or for using for any commercial purpose whatsoever: (1) the designation CORBIN FISHER; (2) the Infringing Domain Names and/or any other URLs that incorporate the Plaintiff's trademarks; (3) any other designation that is likely to cause dilution of the distinctiveness of the Plaintiff's trademarks or injury to the Plaintiff's business reputation; or (4) any other name, mark, or term likely to cause mistake in the mind of the public or to deceive the public into the belief that Defendants' businesses and/or products and/or services are in any way associated with or related to Liberty or its products and/or services; (5) engaging in any non-privileged activities that are calculated to, or reasonably likely to, interfere with the business relationships, existing or prospective, between Liberty and its customers.

b.  directing Defendants to relinquish all rights in the Infringing Domain Names and to transfer the Infringing Domain Names to Plaintiff, Liberty; and directing Defendants to relinquish all rights in any other Internet domain names that contain the term "CORBIN FISHER" or any other confusingly similar variation thereof;

c.  directing Defendants to account to the Plaintiff for any and all gains, profits, and advantages derived by Defendants from the sale of products or services through the use of the infringing mark or the Infringing Domain Names;

d.  awarding Liberty a monetary judgment against Defendants for the maximum damages allowable pursuant to 15 U.S.C. § 1114(1), 15 U.S.C. § 1117, 15 U.S.C. § 1125(a);

e.  trebling the amount of such award on account of Defendants' willful, intentional, and bad faith conduct pursuant to 15 U.S.C. § 1117;

f.  awarding the Plaintiff its reasonable attorneys' fees, costs of Court and disbursements incurred herein in view of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117;

g.  granting the Plaintiff all other relief to which it is entitled and such other or additional relief as is just and proper.

## THIRD CLAIM FOR RELIEF

### Willful Trademark Infringement

66. Plaintiff re-alleges and incorporates by reference as if verbatim, each and every paragraph.

67. This is an action for declaratory and injunctive relief and damages pursuant to 15 U.S.C. § 1114(1).

68. In the course of its conduct of business, Liberty's CORBIN FISHER mark has been continuously used in association with the Liberty Websites. During this period, the Plaintiff's CORBIN FISHER mark and the Plaintiff's reputation has continuously grown throughout the United States and worldwide as a source of origin for services marketed under the CORBIN FISHER trademark.

69. Liberty's mark has become associated in the minds of consumers with one of the most reputable adult-entertainment websites on the Internet, and Plaintiff enjoys the benefit of the ever-increasing fame and goodwill associated with the CORBIN FISHER mark, as a result of its efforts and industry.

70. Defendants' aforementioned acts constitute willful infringement of the Plaintiff's CORBIN FISHER mark in violation of the Lanham Act, Section 32(1), 15 U.S.C. § 1114(1).

71. Consumers are likely to be confused by Defendants' use and display of the Plaintiff's CORBIN FISHER mark as a component of Defendant's Infringing URLs.

72. Consumers who navigate to the Infringing Domain Names are likely to believe that they are navigating to a site owned or endorsed by Liberty, thereby falsely designating the origin of the goods and services offered via the infringing site.

73. Consumers, once so misled, are likely to purchase goods and services at the Infringing Domain Names, believing they are Plaintiff's or somehow affiliated with the Plaintiff,

thereby resulting in a loss of sales to Liberty, blurring of the source of origin of products and services, and diluting the value of Plaintiff's CORBIN FISHER mark.

74. The use by Defendants of Plaintiff's CORBIN FISHER mark in connection with the Infringing Domain Names is likely to cause confusion, mistake, and deception in the relevant marketplace as to the source of origin of online services delivered to the end user who accesses the Infringing Domain Names, and will continue to do so unless enjoined by this Court.

75. By such wrongful acts Defendants has caused, and unless restrained by the Court, will continue to cause serious irreparable injury and damage to the Plaintiff and to the goodwill associated with Plaintiff's CORBIN FISHER mark, including diversion of customers, lost sales, and lost profits, blurring, tarnishment and dilution of Plaintiff's CORBIN FISHER mark.

WHEREFORE, Plaintiff prays that on the Third Claim for Relief, the Court issue an order:

    a. granting a preliminary and permanent injunction restraining Defendants and any and all individuals or entities acting in concert or participation with Defendants, from using in connection with any product or service or the manufacture, importation, exportation, sale, offering for sale, distribution, advertising, promotion, labeling, or packaging of any product or service, or for using for any commercial purpose whatsoever: (1) the designation CORBIN FISHER; (2) the Infringing Domain Names and/or any other URLs that incorporate the Plaintiff's CORBIN FISHER mark; (3) any other designation that is likely to cause dilution of the distinctiveness of the CORBIN FISHER mark or injury to the Plaintiff's business reputation; or (4) any other name, mark, or term likely to cause mistake in the mind of the public or to deceive the public into the belief that Defendants' business and/or products and/or services are in any way associated with or related to Plaintiff or its products and/or services; (5) engaging in any non-privileged activities that are calculated to, or reasonably likely to, interfere with the business relationships, existing or prospective, between the Plaintiff and its customers.

b. directing Defendants to relinquish all rights in the Infringing Domain Names and to transfer these Internet domain names to the Plaintiff, Liberty; and directing Defendants to relinquish all rights in any other Internet domain names that contain the term "CORBIN FISHER" or any other confusingly similar variation thereof;

c. directing Defendants to account to the Plaintiff for any and all gains, profits, and advantages derived by Defendants from the sale of products or services through the use of the CORBIN FISHER mark or the Infringing Domain Names;

d. awarding Plaintiff a monetary judgment against Defendants for the maximum damages allowable pursuant to 15 U.S.C. § 1114(1), 15 U.S.C. § 1117, 15 U.S.C. § 1125(a), and 15 U.S.C. § 1125(d);

e. trebling the amount of such award on account of Defendants' willful, intentional, and bad faith conduct pursuant to 15 U.S.C. § 1117;

f. awarding the Plaintiff its reasonable attorneys' fees, costs of Court and disbursements incurred herein in view of Defendant's intentional and willful infringement, pursuant to 15 U.S.C. § 1117; granting the Plaintiff all other relief to which it is entitled and such other or additional relief as is just and proper.

Dated: August 17, 2010

Respectfully Submitted,

s/ Marc Randazza
Marc J. Randazza, FL Bar # 625566
Jason Fischer, FL Bar # 68762
Randazza Legal Group
2 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
888-667-1113
305-437-7662 fax
mjr@randazza.com